58     126
j 25 SC ⁵155,

## McAleer *versus* McMurray.

· 1. Representations which will entitle a party to recover on the ground of deceit must be both false and fraudulent and such as to induce and do induce the party to part with his money.

2. The instrument of the alleged fraud must not only be fraudulent in its representations, but intended to defraud the plaintiff or the plaintiff and all others, in order to be the foundation of an action for deceit.

3. If agents of a corporation to purchase land, transfer it to the corporation at a higher price than they gave, this is a fraud on the company which it alone can redress.

4. To maintain an action for deceit on the ground of fraudulent representations, it must be affirmatively shown that they came to the plaintiff's knowledge and induced him to give the credit which resulted in the loss. Per Sharswood, P. J.

5. One fact cannot be presumed from another which is itself but an inference.

February 10th 1868.     Before Thompson, C. J., Strong, Agnew and Sharswood, JJ.     Read, J., at Nisi Prius.

Error to the District Court of *Philadelphia:* to January Term 1868, No. 63.

This was an action on the case for deceit, brought by William McAleer against Andrew S. McMurray, Samuel Boyd, Daniel Baird, Robert Boyd, James Boyd, Daniel Boyd, John Cunningham and Robert Guy.

The declaration contained six counts. The first five counts charged substantially that the defendants organized a company to mine oil; had it incorporated by the name of the Olive Branch Oil Company; became directors; represented that its land had cost and was worth $37,500, when it was worth but $8000; issued certificates that there were 100,000 shares, on which $5 each had been paid, when the capital was less than $20,000, and the stock was of no value; that the deeds for the land falsely stated the consideration to be $37,500, when the cost was less than $10,000; that the land was of little value, and that the defendant, relying on these false representations, bought and paid for 500 shares of the stock. The sixth count averred that the defendants, conspiring and intending to commit the frauds, &c., organized and did the other acts mentioned in the former counts, and certified under oath that 50 cents per share had been paid on the stock; that they caused to be apportioned to themselves a large number of shares, which they sold to divers persons, and the plaintiff purchased 500 shares of one Riddle, who represented that certificates would be delivered when the company should be incorporated; that plaintiff not knowing the facts, but confiding in the representations and honesty of the transaction, paid Riddle $625 for the stock, and received a certificate for the shares: that the defendants had paid a much smaller sum than $37,500 for the land, had taken that sum from the treasury, and after paying the smaller sum, had appropriated

[McAleer v. McMurray.]

the residue to their own use; that 50 cents per share had been paid on only a small portion of the 100,000 shares, and that the defendants had not paid anything on their shares: that $5 per share had never been paid to the company by any one, &c. All the counts stated that the plaintiff was deceived.

On the trial below, the plaintiff gave evidence by James Boyd, the secretary of the company, that one McElhenny was the projector of the company; that Baird, S. Boyd and himself participated; that McElhenny sold the land for $12,500 cash and $3000 in stock; the price he asked was $37,500; the difference was paid to some of the directors as commission; all paid in cash or checks except McElhenny; the checks of Baird and Cunningham, Robert and Samuel Boyd & Co., composed of Samuel, Daniel and James Boyd, were returned to them; $20,000 in cash came into the treasury, of the balance $4500 were given to Baird & Cunningham, $3000 to Robert Boyd, and $6000 to Samuel Boyd & Co., besides the checks; these sums did not go on the books of the company; McElhenny gave receipts for $37,500. Nothing was then paid to him. An assessment of 5 cents per share was called in and paid. McMurray did not know the price at which the land was sold. Samuel, Robert and Daniel Boyd and the witness knew. Thomas Riddle testified that in the spring of 1865, he sold to plaintiff 500 shares of Olive Branch stock. Plaintiff asked witness to sell him some oil stock—he wanted to buy 1000 shares of Hubert oil stock. Witness sold him 500 shares of Hubert and 500 shares of Olive Branch. Witness told him he had Olive Branch stock, but did not want to sell it. Plaintiff made no inquiry about the value of the stock, nor where the land was, nor what it cost; he asked no questions; witness told him nothing about it; plaintiff simply wanted oil stock.

The plaintiffs gave in evidence also the deeds for the land to McMurray and the others; the aggregate consideration stated in the deeds was $37,500; the deeds were made to McMurray and the others because they were directors of the company, and letters patent had not been issued.

The articles of association, dated December 17th 1864, certificate of organization sworn to January 23d 1865, and duly recorded, letters patent dated April 3d 1865, transfer to plaintiff from Riddle May 15th 1865, and deed from McMurray and others to the company, dated June 19th 1865, were also given in evidence.

The defendants offered no evidence, but submitted points as follows, viz.:—

1. To enable the plaintiff to recover, the jury must be satisfied that the defendants made the representations alleged in the declaration, that the same were false, were known by the defendants to be false, and were made by them fraudulently and with intent to deceive the plaintiff, that the plaintiff had knowledge of such representations at the time of his purchase of the

[McAleer *v.* McMurray.]

stock, and relied upon them as true, and was induced to purchase and did purchase by reason of the said representations.

2. To entitle the plaintiff to recover, the jury must be satisfied that the representations alleged to have been made by defendants were made by them with a fraudulent purpose, and with intent to deceive and mislead the plaintiff, and that the plaintiff purchased by reason of such representations.

3. Notwithstanding the jury should find that the defendants made the representations alleged, and that the same were false, unless such representations were made to the plaintiff, or were intended to be, and were accordingly communicated to him, the plaintiff cannot recover.

4. Falsely stating the consideration in the deed to Olive Branch Oil Company to be $37,500 is not such a representation to any subsequent purchaser of the stock of said company of the price paid for the land conveyed in said deed as to render the defendants liable to such stockholders in an action for deceit in making such false statement.

The court declined to affirm the defendants' points, and reserving the points hereafter mentioned, charged that the record of the certificate was a publication to the world, and that plaintiff was to be presumed to have examined, and to know its contents, and that it was not necessary to prove actual knowledge, and that the plaintiff could recover.

The points reserved were :—

1. Whether the plaintiff was entitled to recover for the alleged fraud, or whether the company was the party defrauded.

2. Whether it was necessary to bring home personal knowledge to plaintiff of the alleged misrepresentations in the recorded certificate.

The verdict was for the plaintiff.

The court in banc afterwards entered judgment for the defendants on the reserved points, Sharswood, P. J., delivering the opinion, as follows :—

" We are now to consider the reserved point. It is too plain for argument that the stockholder of a corporation cannot maintain an action against either directors or other persons for a wrong to the corporation. There is no privity to sustain the action. The creditor of a corporation might as well do so. Indeed he would have a better right, for the damages suffered by the corporation ought to be applied, when recovered, to the payment of its debts before being divided or distributed among the stockholders. It seems hardly necessary to cite cases for so plain a proposition. Yet in the struggles of injured stockholders for redress, this has been attempted and failed : Smith *v.* Hurd, 12 Met. 371 ; Allen *v.* Curtis, 26 Conn. 456 ; Hersey *v.* Veazie, 24 Maine 9. The plaintiff's counsel have in effect recognised this in the form of

[McAleer v. McMurray.]

their pleading. This action is only sustainable as an action for a deceit against several persons. Nothing in the whole course of the law seems better settled than that to maintain such an action it must appear that plaintiff knew and relied upon the representations alleged to be false and fraudulent. We might cite for this every case from Pasley v. Freeman, 3 T. R. 51, down, but it will be enough to refer to the decisions of our own Supreme Court in Huber v. Wilson, 11 Harris 178; Harris v. Tyson, 12 Id. 347. Justice Wightman, in one of the English cases cited and relied on by plaintiff's counsel (5 Ell. & B. 867), says of such an action, 'All the essentials for an action for false representation are here. The representation is untrue; it is known by the persons making it to be untrue; it is calculated to induce the plaintiff to act; and he believing it, is induced to act accordingly.' There are authorities, no doubt, to be found to support the position that the representation need not be made directly to the plaintiff: Gerhard v. Bates, 2 Ell. & B. 476, and the American cases cited in the note to the same case, 75 E. C. L. R. 491; but it must be affirmatively shown to have come to the plaintiff's knowledge, and to have induced him to give the credit which has resulted in the loss. As Gibson, C. J., expresses it, 'a constructive deceit is a new thing under the sun:' Bokee v. Walker, 2 Harris 141. There was here no evidence whatever that the plaintiff knew of the false and fraudulent representations made by defendants, and if he did not know he could not have been deceived by them. The nearest approach to evidence of knowledge is the certificate of shares. It is argued that the plaintiff may be presumed to know that by the law of its organization, the corporation was forbidden to issue shares for less than their par value, and the certificate on its face, therefore, is a representation of the fact that the company had received the full par for the stock. This is rather a remote inference, and the strong presumption is the other way, from the fact that only four months after the organization of the company he paid but one dollar and twenty-five cents a share for the stock when it called for five dollars. However, the answer is, that there was no evidence that plaintiff ever saw a certificate till after he had bought the stock and it was transferred to him. Before that he could not have seen his own certificate, for it was not in existence. No doubt he inquired of his vendor how much had been called in on the stock, and might have been told in good faith that all that had been paid in was one dollar a share. It is urged, however, that the certificate which was recorded according to law, was a publication to the world of the facts set forth in it, that the plaintiff must be presumed to have consulted the record before he purchased, and therefore to have been deceived. The judge below so charged the jury, having reserved the question. But what was there in the Act of Assembly to raise any presumption that

8 P. F. SMITH—9

[McAleer *v.* McMurray.]

the plaintiff saw and relied on it? It was plainly intended to
give information of the facts, but its object went no further. If,
in truth, representations of the character complained of had come
to the plaintiff's ears, he could not have been precluded from re-
covering by showing that the recorded certificate contained a
statement of the exact truth. It no more raised a presumption
either in law or fact of the plaintiff's knowledge, than would the
posting up of the certificate in the company's office, or on the
corners of the streets. Nor was it near so strong in point of fact
as would have been the publication of it in a newspaper, proved
to have been taken and read by the plaintiff. It would be mon-
strous to say that such a publication should be evidence against a
party to visit him with notice. How, then, could it be evidence
for him of knowledge? It cannot be inferred that a party reads
all the contents of any newspaper he may choose to take : Belts-
hoover *v.* Blackstock, 3 Watts 26. As experience of the common
course of human actions is the mother of all presumptions, it
would fall more within it to hold that the plaintiff read the publi-
cation in his newspaper than that he sent to Venango county to
examine the records. We think there was neither presumption
of law nor of fact to be submitted to the jury that there was any
knowledge by plaintiff of the alleged false and fraudulent repre-
sentations, and if he did not know of them, he, of course, was
not deceived.

" I have examined with great care every case which has been
cited to us by the plaintiff's counsel as sustaining the action.
Though there are some dicta in his favor, there is no decision. In
Adamson *v.* Jarvis, 4 Bingh. 66, there was no question of plain-
tiff's knowledge. He had, as auctioneer and agent of the defendant,
sold the goods of a third person and paid over the money to defend-
ant, and was afterwards mulcted in damages to the party injured.
The action for the false and fraudulent representation by de-
fendant of the goods as his was held to be maintainable. The general
language of C. J. Best, which is here relied on, is to be qualified
by the facts of the case when he says, 'He who affirms either
what he does not know to be true or knows to be false, to another's
prejudice and his own gain, is, both in morality and law, guilty of
falsehood, and must answer in damages.' Scott *v.* Dixon, 1 Ellis
& Ellis 1099, was the case of a false and fraudulent report made to
shareholders, printed for general circulation ; and part of the case
was that plaintiff procured one of these reports and bought his stock
on the faith of it. Gerhard *v.* Bates, 2 Ell. & Bl. 478, was a
demurrer to a declaration which alleged certain false and fraudu-
lent representations made in a public advertisement, and that
defendants by means thereof induced the plaintiff to purchase his
shares. Denton *v.* The Great Northern Railway Co. 5 Ell. & Bl.
860, was an action against the defendants for a false and fraudu-

[McAleer v. McMurray.]

lent representation in their time-table, by which plaintiff had suffered damage. It was a fact in the case that the plaintiff had consulted the time-table before he took his passage. In Wontner v. Shairp, 4 M., Gr. & Sc. 404, it is expressly stated, that the plaintiff saw the notice which contained the alleged false representations. Bagshaw v. Seymour, Bagshaw v. Lake, 18 C. B. 903; in the House of Lords, 4 C. B. N. S. 873. In consequence of the falsehood of the defendants a committee of the stock exchange inserted the stock in an official list, which was made up from reports by the officers. It is stated expressly that the plaintiff saw the name of the stock inserted on the list, and bought on the faith of it. In Bedford v. Bagshaw, 4 Hurlstone & Norman 537, it appeared that the plaintiff was induced to purchase in consequence of the alleged fraud. Barnes v. Pennell, 2 Clark & Finnelly's Appeal Cases, N. S. 479, was a Scotch appeal in the House of Lords. It was a proceeding to make the directors of a corporation liable for false and fraudulent representation; and Lord Campbell said, in the course of his opinion, 'It must be shown that the purchaser of these shares was induced to purchase them by the deceit of the directors.' Cazeaux v. Mali, 25 Barbour 578, arose on demurrer to the complaint or declaration. It alleged that the plaintiff was influenced by the alleged fraud. Judge Mitchell, after having laid down the proposition that 'the representation must have been made to deceive the plaintiff and must have produced that effect,' observes afterwards as to the complaint, 'He could not have been influenced if they had not been in some way reported to him.'

"There are, however, two or three cases particularly relied on, which deserve more special notice. The first of these is Watson v. The Earl of Charlemont et al., 12 Ad. & Ell. N. S. 856. It was an action for money had and received, to recover back what had been paid on an alleged false and fraudulent representation. There was a public advertisement, and no evidence that the plaintiff saw it. At pp. 863, 864, there is a colloquy among the judges, which certainly strongly favors the plaintiff's case. Lord Denman, C. J.: 'I think that if an untrue statement is published, which is likely to induce a party to enter into a contract, and he does so, the person who made the false statement is bound independently of any proof that the other was actually induced by it to contract.' Coleridge, J.: 'As at present advised, I am of opinion that if an advertisement is put out to induce parties to enter into a certain contract, and an individual does afterwards enter into such contract, and then comes into court to complain of misrepresentation, it is no part of his case to show that he was cognisant of the advertisement. Primâ facie it will be taken that he was influenced by it.' The other two judges acquiesced. If the law is here correctly stated, then there ought to be judgment

[*McAleer v.* McMurray.]

for plaintiff on this reserved point. These judges did not think of submitting a question of fact without an evidence upon it to the jury. Prima facies is conclusive till evidence is given in contradiction. But after all this the case was decided in favor of the defendant and the plaintiff nonsuited on another ground, that there was no evidence that the defendant had received the money; Lord Denman expressly disclaiming to give an opinion upon any other point discussed during the argument. This case then is certainly no authority. The next case is Wheelton *et al. v.* Hardisty, 8 Ell. & Bl. 232. That was an action on a life policy, to which the fourth plea was that the declaration in the policy that plaintiff had not any fit since childhood, was untrue. To this plea there was what is termed an equitable replication, setting up that before the policy was entered into, defendants circulated a prospectus whereby they undertook that their policies should be unquestionable except on the grounds of fraud, and that the plaintiffs were induced to enter into the policy on the faith thereof. On the trial it appeared that such a prospectus was issued, but no proof was given that the plaintiffs saw it, or were induced by it to make the policy. There were several rules taken, and among others why a verdict should not be entered for the defendant on this equitable replication to the fourth plea, on the ground of the defect in the evidence. Erle, J., delivered the opinion of the court. On this point he said, 'The evidence of the existence of the prospectus was quite as consistent with the plaintiffs' not knowing it or not being induced to act upon it, as of their knowing and acting upon it. The plaintiffs may very well have effected the written contract without any reference to the prospectus; and modern cases have established that where the party on whom the onus lies of proving an allegation gives evidence as consistent with one view of the case as with the other, he fails in his proof.' Lord C. J. Campbell dissented, putting his opinion mainly on the ground that the jury might presume from the circumstances that the plaintiffs had not seen the prospectus. 'I think,' says he, "the jury might not unreasonably infer that according to the course of business, copies of the prospectus were given to customers coming to the defendants' place of business, and were posted up in their office so as to be seen by all who dealt with them, the object of the defendants evidently being that the prospectus should be known as generally as possible.' 'If they saw and read the prospectus, the next inference would almost be inevitable that the plaintiffs were induced to effect the policy with the defendants by the encouraging allegation that it would be unquestionable if they practised no fraud in obtaining it." Judgment was, however, entered for the defendants on the fourth plea and the equitable replication. The case was removed to the Exchequer Chamber, but on this part of the judgment below that court pronounced no

[McAleer v. McMurray.]

opinion. This then is an authority for the defendant, and not for the plaintiff.

"There was another case referred to in the argument, Langridge v. Levy, 2 M. & W. 519. Defendant had sold a gun warranted or represented to be of a particular make. The person who bought it stated at the time that it was for the use of his son. The latter, who suffered an injury from it, brought the action. It is unnecessary to examine the grounds upon which Baron Parke put the decision of that case. It is enough for our present purpose to notice that the plaintiff is stated to have known of the representation. In Thomas v. Winchester, 2 Selden 396, defendant had placed a false label on a bottle containing poison, and it came through several hands to plaintiff. It is plain from the case that the plaintiff saw the label on the bottle before he swallowed its contents. In both these cases the question discussed was whether there was sufficient privity between the plaintiff and defendant.

"I have examined this case much more at length than is usual with me, both because of its novelty and importance, and because, as I understand, there are several other cases pending of the same character. Indeed, if every shareholder of stock in an oil company, whose stock has fallen to zero, can maintain an action against the projectors, who have pocketed large gains by the sale of oil territory to the company, and made representations to induce the public to confide in the stock, which were not true, we may expect a very large crop of such actions. The plaintiff and others in the same situation are not, however, without remedy, and that a simple, complete and full one. An action in the name of the corporation at law will lie. Or if they refuse to allow that, then a bill in equity may be maintained by one stockholder for the benefit of all, making the corporation as well as the tortfeasors defendants, and thus in one proceeding in regard to each separate concern, complete and equal justice may be done to all: Kitchen v. Cougnor, 4 Russel Ch. R. 562; Hodges v. New England Senna Co., 1 Rhode Island 340; Attorney-Gen. v. Utica Ins. Co., 2 Johns. Ch. 385; Robinson v. Smith, 3 Paige 231; Cunningham v. Pell, 5 Ibid. 607."

The plaintiff took a writ of error, and assigned for error the entry of judgment for the plaintiffs. ⟨illegible⟩

*E. S. Miller*, for plaintiff in error.—The jury might infer that the plaintiff examined the deceptive words: Watson v. Charlemont, 12 Ad. & El. N. S. 856; Whelton v. Hardisty, 8 Ell. & Bl. 232. There was a contract, or representation that the company was honestly organized: Bruff v. Mali, 7 Am. L. Reg. N. S. 48; N. Y. & N. H. Railroad Co. v. Schuyler, 34 N. Y. 30;

[McAleer *v.* McMurray.]

Cazeaux *v.* Mali, 25 Barb. 586; Polhill *v.* Walter, 3 Barn. & Ad. 114.

The rule applies where the authority is admitted, but where fraudulent acts diminish or destroy the value of the thing purchased: Cross *v.* Sackett, 2 Bosw. 518; Bedford *v.* Bagshaw, 4 Hurlst. & N. 538; Allen *v.* Addington, 7 Wend. 9; Farmers' & M. Bank *v.* Butchers' & D. Bank, 2 Sm. (N. Y.) 141.

If one by tortious act cause injury to another, privity or directness of relation between the parties is not necessary: N. Y. & N. H. Railroad *v.* Schuyler, *supra;* Vandonborg *v.* Truax, 4 Denio 464; Dixon *v.* Bell, 5 M. & S. 198; Illidge *v.* Goodwin, 5 C. & P. 190; Lynch *v.* Nurdin, 1 Ad. & E. N. S. 29; Van Brackton *v.* Fonda, 12 Johns. 468; Guille *v.* Swan, 19 Id. 381; Leame *v.* Bray, 3 East 593; Scott *v.* Shepherd, 2 W. Bl. 892; Thomas *v.* Winchester, 2 Seld. 411; Ilott *v.* Wilkes, 3 B. & Ald. 304; Williams *v.* Wood, 14 Wend. 126; Shrewsbury *v.* Blount, 2 Man. & Gr. 475; Pilmore *v.* Hood, 5 Bing, N. C. 97; Langridge *v.* Levy, 4 M. & W. 337: Benton *v.* Pratt, 5 Wend. 385; Jarrett *v.* Kennedy, 6 C. B. 319; Pulsford *v.* Richards, 17 Beav. 87; Wontner *v.* Shairp, 4 Man. Gr. & Sc. 422; Colt *v.* Woollaston, 2 P. Wms. 154.

*H. S. Hagert* and *G. W. Biddle*, for defendants in error.—To entitle the plaintiff to recover on the ground of misrepresentation, he must show that the representations were falsely and fraudulently made with intent to deceive, and that the plaintiff had knowledge of the representations at the time he purchased, and was thereby induced to purchase, and that he did purchase relying upon them as true: Huber *v.* Wilson, 11 Harris 178; Harris *v.* Tyson, 12 Id. 347; Phipps *v.* Buchman, 6 Casey 401; Watson *v.* Charlemont, Wheelton *v.* Hardisty, *supra*.

Presumptions are conclusions from facts proved, and one presumption cannot be supported upon another, or one fact presumed from another fact which is not itself proved but presumed merely: Douglass *v.* Mitchell, 11 Casey 446; Gerhard *v.* Bates, 20 Eng. L. & E. 130; Polhill *v.* Walter, Bedford *v.* Bagshaw, Pilmore *v.* Hood, Jarrett *v.* Kennedy, *supra;* Pulsford *v.* Richards, 17 Beav. 87.

The misrepresentation must be such as gives rise to the contract and on which the party relies, and without which he would not have entered into it: Wontner *v.* Shairp, Bruff *v.* Mali, Cross *v.* Sackett, Cazeaux *v.* Mali, *supra;* Seizer *v.* Mali, 32 Barb. 76; Maby *v.* Adams, 3 Bosw. 346; Atwood *v.* Small, 6 C. & F. 232–449; Shrewsbury *v.* Blount, *supra;* Scott *v.* Lara, Peake's Cases 226; Behm *v.* Kemble, 7 C. B. N. S. 260; Moens *v.* Heyworth, 10 M. & W. 147; Taylor *v.* Ashton, 11 M. & W. 401; Incledon *v.* Watson, 2 Fos. & Fin. 850; Smith *v.* Clinch, 4 Fos.

[McAleer v. McMurray.]

& Fin. 579; Gray v. Collins, 4 Fos. & Fin. 302; Longmead v. Holliday, 6 Exch. 761; Winterbottom v. Wright, 10 M. & W. 109; Mangan v. Atterton, 1 Law Rep. Exch. 239; Commonwealth v. Harmar, 22 Leg. Int. 76; Leonard v. Wright, 11 I. S. N. S. 259.

Can the plaintiff recover because the defendants participated in the vendor's profit on the sale? At most this would be but a legal fraud: 1 Story's Eq. Jur. § 315. Actual fraud is necessary to maintain an action for deceit: Bokee v. Walker, 2 Harris 139. A stockholder cannot maintain an action for such fraud as is alleged; it must be by the company: Allen v. Coates, 26 Conn. 456; Smith v. Hurd, 12 Metc. 371; Horsey v. Vezie, 24 Maine 9; French v. Fuller, 23 Pick. 108; Robinson v. Smith, 3 Paige Ch. R. 222; Cunningham v. Pell, 5 Id. Ch. R. 613.

The opinion of the court was delivered, February 27th 1868, by
THOMPSON, C. J.—Not a word of testimony appears to have been given by the plaintiff to show that he was induced to purchase any stock in the " Olive Branch Oil Company," by direct representations, true or untrue, by any person. This essential was attempted to be supplied by presumptions; one to stand as a postulate, and another as the inference. This is not admissible: Douglass v. Mitchell, 11 Casey 446; and is the substance of the ruling of Erle, C. J., in Common Bench in Wheelton v. Hardisty, 8 El. & Bl. 232. I cannot well conceive of a case where a presumption of fact can ever be drawn from presumptions of the same kind. The practical operation of the theory in this particular case is, that it is to be presumed that the plaintiff must have seen and inspected the certificate of organization of the company, either in the auditor-general's or recorder's office, and by its false presentation he is to be presumed to have been induced to purchase the stock in question. Neither one nor other of these propositions asserts a natural or even a very probable result. They are not such presumptions as to induce the belief that it would be most likely that the plaintiff would examine the certificate before purchasing. That would depend on many things—amongst others, the business habits of the man, and his convenient opportunity. The paper itself, if seen, would hardly, if in proper form, have held out any peculiarly lively inducements to buy. A much greater probability is, that the plaintiff purchased the oil stock because such stocks were just then in great demand. In fact that is the only inference that can reasonably be drawn from the testimony of Riddle, his vendor. This shows that he simply wanted oil stock, and he sold him the stock, with some others, without inquiry by him in regard to the character of the company, or how its shares were going in market, or any representation in regard to it whatever. As he asked for Hubert oil stock, and not

[McAleer *v.* McMurray.]

for Olive Branch, it does not appear that he knew of the existence of that company until that moment. He bought without inquiry. These facts show that the presumption of examination of the organization by plaintiff, if otherwise good for anything, would in this instance be very unreliable. But on this point it is well settled that the representations which will entitle a party to recover on the ground of a deceit must be both false and fraudulent, and such as to induce and did induce the plaintiff to part with his money: Huber *v.* Wilson, 11 Harris 178; Harris *v.* Tyson, 12 Id. 347. Nothing like that was shown.

It is not intended to deny that a false and fraudulent advertisement, prospectus, or label; instances of which have been given, may not be such representations as may be the foundation of an action of deceit; but I do not believe that it has ever been held that a party may recover as for a deceit practised alone by such means, without it having been shown that he had seen the fraudulent instruments. The notice that our brother Sharswood took of the cases on this point in his opinion in deciding the reserved question, however, is a sufficient vindication of this position. In such cases the instrument must not only be fraudulent in its representations, but intended to defraud the plaintiff or the plaintiff and all others, in order to be the foundation for such an action as this. Testimony to this extent was entirely wanting in this case.

The other reserved question was sufficiently dealt with in the opinion of the learned president of the District Court. If the defendants, acting as agents for the corporation, purchased land at one price, and transferred it for a greater, to the company, this was a fraud on the company which it alone could redress. The allegation and proof of a purchase of the realty by the defendants at $12,500 in cash, and $3000 worth of stock, would not advance the plaintiff's case. He did not connect his loss with this act, but with another cause, viz., that the land was not oil territory—had no oil on it. It was not on account of the realty as such he bought the stock, but because he presumed its product would make it valuable. In that he was mistaken. He is entitled to his proportion of the capital, and this he must get from the company. It must collect whatever is due to it, or has been wrongfully taken from it, in order to make distribution in winding up. If it can sue for this alleged fraud of its agents, the plaintiff cannot, and that it can admits of no doubt, and needs no authority to prove. Perhaps we ought to say that Mr. McMurray, one of the above-named defendants, was acquitted below of all blame, and any remarks in regard to the alleged fraud on the company by others of the defendants do not apply to him; nor do we say there was intentional fraud on the part of the others; but if

[McAleer v. McMurray.]

the facts are as stated, their acts operated as a fraud. Seeing nothing to correct, the judgment of the District Court is

Affirmed.