# Gillespie et al. *v.* Hunt et al., Appellants.

*Deceit—Belief in false statements—Reliance on statements—Burden of proof.*

1. A defendant has the burden of proof of showing he believed in the truth of false statements, upon which plaintiff relied to his injury.

2. An action for deceit will be sustained if plaintiff was injured by relying upon false statements, which were partly matters of opinion and partly matters of fact.

*Appeals—Review—Facts and inferences.*

3. In a case tried before the court below without a jury, the facts and inferences therefrom, found by the court upon sufficient evidence, must be accepted as true by an appellate court.

*Practice, C. P.—Trial without jury—Conclusions—Findings—Immaterial findings.*

4. In a case tried by the court below without a jury, if it appears there was evidence to sustain findings upon which the judgment could properly be based, it will not be reversed although there were other findings which were not sufficiently proved. Under such circumstances the immaterial findings may be excluded from consideration.

*Deceit—Concealment of relevant facts—Fraud—Appeal.*

5. While the mere concealment of relevant facts is not necessarily a legal fraud, it may be evidence of the actual fraud necessary to maintain an action of deceit; hence if the trial court finds actual fraud from the fact of concealment, this conclusion is binding on appeal.

*Deceit—Principal and agent—Liability of principal.*

6. In an action for deceit, a principal may be held liable for the false statements of his agent, if the principal used them to induce others to act, and the latter were in fact injured by relying upon them, if also the principal knew them to be false, or the agent did, because of knowledge acquired during the course of the agency.

*Deceit—Parties—Source of information—Statement to third party.*

7. Where a party brings an action of deceit in his own name, it is necessary for him to prove he was injured by reason of false statements made by or for defendants to him personally, or as a member of the public generally; he cannot recover upon proof that they were made to a third party, who communicated them to him without the knowledge or request of defendant.

Argued October 16, 1922. Appeals, Nos. 166-177, by defendants, from judgment of C. P. Allegheny Co., April T., 1921, No. 43, July T., 1921, No. 584, Oct. T., 1922, No. 168, July T., 1921, No. 264, Jan. T., 1921, No. 2651-6, Oct. T., 1921, No. 2543, July T., 1921, Nos. 262-3, for plaintiffs, on cases tried by the court without a jury in suit of D. L. Gillespie, Wm. McK. Reed et al. v. Robert W. Hunt et al., trading as Robert W. Hunt & Co. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed as to Wm. McK. Reed. Affirmed as to other plaintiffs.

Trespass for deceit. Before SHAFER, P. J., without a jury.

The opinion of the Supreme Court states the facts.

Judgment for plaintiffs. Defendants appealed.

*Errors assigned* were in overruling exceptions to adjudication, quoting record.

*William S. Dalzell,* of *Dalzell, Fisher & Dalzell,* for appellant.—While it is doubtless the rule that where one makes an unqualified statement which implies knowledge on his part, when he has no such knowledge,

is guilty of fraud, if his statement proves false, such rule is held to apply only where the statement is with respect to a matter which is definitely ascertainable: Watts v. Cummins, 59 Pa. 84; Lynch's App., 97 Pa. 349.

In general, the mere suppression of a material fact will not, of itself, amount to such fraud as will render a person liable in deceit: Bokee v. Walker, 14 Pa. 139.

In order to recover in an action for deceit plaintiff must prove: (a) That the defendant's representation was, in fact, untrue; (b) that the representation was known by defendant to be untrue when made; (c) that the representation was calculated to induce plaintiff to act; and (d) that plaintiff, relying on the representation, was induced to act upon it to his injury: Cox v. Highley, 100 Pa. 249; Lamberton v. Dunham, 165 Pa. 129; Griswold v. Gebbie, 126 Pa. 353; Erie City Iron Works v. Barber, 106 Pa. 125; P. R. R. v. Zug, 27 Pa. 480; Huber v. Wilson, 23 Pa. 178; Fischer v. Taylor, 257 Pa. 132; McAleer v. McMurray, 58 Pa. 126.

*David A. Reed,* of *Reed, Smith, Shaw & Beal,* with him *George H. Calvert,* of *Calvert, Thompson & Wilson,* for appellee.

OPINION BY MR. JUSTICE SIMPSON, January 3, 1923:

By agreement, these twelve actions for deceit were tried together before the president judge of the court below, without a jury; his findings were in favor of all the plaintiffs; exceptions thereto were dismissed and, from the judgments entered for plaintiffs, these twelve appeals were taken by defendants. They were argued together here, and will be decided in a single opinion.

The court below found that defendants, owning a controlling interest in a syndicate which had leased forty acres of land in what is known as the Miami Lead and Zinc field, situated in Oklahoma and Kansas,—the lease being forfeitable if operations were not carried on,—conceived the idea of tranferring twenty acres thereof to a

corporation, wherein also defendants were largely interested, which in turn was to organize a new company, to take title to and develop the twenty acres, defendants to receive a block of its stock, without payment, and $40,000 in cash, to be realized from the sale of other stock to those who could be induced to subscribe to it. This plan was carried out; an agent of defendants, sent to the field to examine the property, made a report on it, closing with the words "we [appellants] would unhesitatingly recommend the immediate development of the property and building a mill thereon." The report did not show, and plaintiffs did not know, until subsequent to the judicial sale hereinafter referred to, that defendants were interested in the tract, the syndicate, or either of the companies; and the character of the report was such as to lead to the belief they were only acting as mining engineers, though, as stated, the fact was otherwise.

The report was delivered to a promoter, employed to solicit subscriptions to stock of the proposed company, and was in fact used for that purpose, being shown by him to all of the plaintiffs (except William McK. Reed), none of whom "had any experience in or knowledge of the mining of lead and zinc ore." Much of the evidence taken in the court below, and its findings are to the effect that a number of the statements made therein were calculated to mislead the proposed subscribers, and did mislead plaintiffs, who, by reason thereof paid for certain shares of stock of the proposed corporation, the property of which was later sold at judicial sale, realizing nothing for the stockholders; hence plaintiffs now claim to recover back the amounts they paid for it. Appellants expressly admit that "in so far as any representations contained in the report may have been untrue, there can be no doubt of the soundness of the court's conclusion." Upon this basis we shall consider the appeals.

It is said, however, that the judgments should be reversed because some of these statements were regarding matters of opinion only, for which, even if untrue, de-

fendants could not be held liable in an action for deceit; and also that some of the findings had no evidence to support them. It is unnecessary to consider these contentions; other statements therein, also found to be untrue, were clearly as to matters of fact, with ample evidence to support them, notably that "twenty-six holes have been drilled upon this property......[which] show a consistent mineralized zone within the property, with assays running up to seven per cent and better. None of the drill holes were blanks, as all of them showed ore in goodly quantity"; the report adding, apparently in order to make certain that these statements would be accepted as true, "Inasmuch as the drilling was done under the supervision of our own engineers, we can guarantee their absolute correctness and authenticity." So also the untrue allegation that the twenty acres "is surrounded on all sides by highly proven and developed properties," was not only an averment of fact, but was calculated, in the strongest way possible, to deceive proposed subscribers, who knew that if on all sides of a given tract are "highly proven and developed" mining properties, the tract itself, in all human probability, would also be underlaid with the same kind of minerals. The court below is criticized for quoting this statement without its context, which averred mills constructed or being constructed in a number of directions from the twenty-acre tract. But even if this is so, it does not necessarily determine that the tract "is surrounded on all sides by highly proven and developed properties," especially as the alleged mills do not appear on properties to the north or northeast.

The statements above quoted being found to be untrue and relied upon by plaintiffs to their injury, defendants "should at least be charged with the burden of proof of showing" they believed them to be true (Griswold v. Gebbie, 126 Pa. 353, 365) and as the court below found they had not done this, it becomes a matter of indifference that there were others which were merely

matters of opinion; an action for a deceit will lie although misstatements of fact and opinion were both relied upon by the party deceived: 20 Cyc. 41; 12 Ruling Case Law 358. So, also, if we eliminate the other findings which it is alleged had no evidence to support them, the judgments will stand. Unlike an appeal from a general verdict of a jury, without specific answers to questions submitted, we can here determine that in these false statements alone there was ample basis for the conclusion reached.

For the same reason we need not review at length the assignments of error which complain that the court below admitted evidence to prove, and subsequently found as facts, that defendants concealed the fact that they were personally interested in the property to be sold to the proposed corporation, though posing as only disinterested mining engineers employed to examine it, and that the subscriptions were partly induced by Rice, the agent, and McNaugher, one of defendants, falsely representing that each of them had agreed to take $10,000 worth of the stock, when in reality these subscriptions were not made until each was given an agreement that the amount payable by reason thereof would be forthwith returned to him; defendants joining in the fraud for the purpose of deceiving plaintiffs, knowing the latter would not subscribe if these facts became known.

We think this evidence was pertinent as part of the history of this unsavory transaction and as disclosing the purpose of the parties to it. The court below found that what was done in these respects was in "furtherance of the general object for which the representations complained of were made, and to give effect to those representations, and contributed to do so." As these were facts or inferences which could be drawn from the evidence, we must accept them as true: Jamison v. Collins, 83 Pa. 359; New York & Penna. Co. v. New York Central R. R., 267 Pa. 64. Of course a mere concealment of rele-

vant facts is not a legal fraud, as Bokee v. Walker, 14 Pa. 139, decides, but, as that case states, it is "evidence of actual fraud, but not conclusive, and actual fraud is necessary to maintain the action." Here the evidence was admitted as tending to prove the actual fraud, and the fact was found accordingly. Moreover, even if neither the evidence nor the findings on these points were relevant to the issues raised, as we have already shown, no harm could be done to defendants thereby.

Appellants point out in their brief that there was no specific finding that defendants knew of the falsity of the representations. This was not alleged as a defect in the court below, is not indicated in the assignments of error, and hence cannot be considered. Besides, while it is true there was no direct finding on the point, some of the representations were of such a character that defendants' agent must have known of their falsity, and, this being so, defendants are liable therefor, because the knowledge was acquired during the course of the agency: Griswold v. Gebbie, 126 Pa. 353; McNeile v. Cridland, 168 Pa. 16. Moreover, the court below states the law to be that there could be no recovery in the absence of knowledge on their part, and hence, as he allowed recovery, he necessarily found knowledge.

This brings us to the only other point suggested in the statement of questions involved, namely, Whether or not it affirmatively appears that each of the plaintiffs was misled by the report? It is true the evidence in some of the cases was not as strong as in others; but in each it was sufficient, except in the case of William McK. Reed, to sustain the finding that plaintiffs were shown the report for the purpose of inducing them to subscribe to the stock, which they did in reliance upon the truth of the statements therein.

As to Mr. Reed, however, it does not appear that he saw it, or even had any communication with plaintiffs, or any agent of theirs. As a result of conversations with Mr. Gillespie, another of the plaintiffs, he received part

of the latter's subscription of $25,000, but since he, Mr.
Reed, brought suit in his own name, he was required to
show, in order to recover, that he was misled by misrep-
resentations made by or for defendants to himself per-
sonally, or as a member of the public generally.  Herein
his case fails.  He was not one of those whom defendants
sought to influence.  His testimony shows only that he
relied considerably on his own knowledge of defendants,
with whom he had been acquainted for about 25 years;
that Mr. Gillespie spoke to him about the report, not in
detail, but to the effect that defendants had made a won-
derful report and he had checked it up with a number
of men connected with them.  This testimony is not sup-
plemented by any other evidence on the point, and hence,
since the representations were not made by defendants
to him, or intended by them to be communicated to him,
he cannot recover against them as for a deceit.

Upon this point we may repeat what was said in Mc-
Aleer v. McMurray, 58 Pa. 126, 135-6: "Not a word of
testimony appears to have been given by the plaintiff to
show that he was induced to purchase any stock......
by direct representations, true or untrue, by any per-
son......It is not intended to deny that a false and
fraudulent advertisement, prospectus or label......may
not be such representations as may be the foundation of
an action of deceit; but I do not believe that it has ever
been held that a party may recover as for a deceit prac-
tised alone by such means, without it having been shown
that he had seen the fraudulent instrument......In
such cases the instrument must not only be fraudulent
in its representations, but intended to defraud plaintiff
or the plaintiff and all others, in order to be the founda-
tion for such an action as this.  Testimony to this extent
was entirely wanting in this case."

"The false statement must have been made for the
purpose of being acted upon either by the person to
whom it was made, or by some third person who it can
be reasonably said was within the contemplation of de-

fendant and to whom the statement was intended to be communicated. Representations made for a different purpose, or intended for persons other than plaintiff, cannot be made the basis of an action of deceit": 20 Cyc. 35.

"It is well settled that where a false statement is made to the public at large for the purpose of influencing the action of any individual to whom it may be communicated, any person acting in reliance upon it and thereby sustaining injury may maintain an action against the person who made it, and that in such case it is not necessary that there should be an intent to defraud any particular person; but in such cases the representation must of course have been intended for the public": 20 Cyc. 81-2.

The law is declared to the same effect in 12 Ruling Case Law 363-365, and 26 Corpus Juris 1121-1123, many authorities being cited to sustain the text.

The judgment of the court below in favor of William McK. Reed is reversed, and its judgments in favor of the other plaintiffs are affirmed.