## Obenski v. Brooks

*Stephen Feldman*, for plaintiffs.
*Adrian King*, for defendant.

TAKIFF, *J.*, May 12, 1978—Presently before the court is plaintiffs' motion for an order compelling discovery. Plaintiffs seek the issuance of an order requiring defendant herein, upon the resumption of

a deposition examination originally held and adjourned on March 1, 1977, to answer certain questions propounded by plaintiffs' counsel which defendant wilfully failed to answer on that date. Plaintiffs also ask that defendant be required to bring with him certain documents requested in plaintiffs' notice of deposition which he did not bring to the initial examination. Upon consideration of said motion, defendant's answer thereto, and oral argument held March 15, 1978, we conclude that plaintiffs are entitled to the relief sought, and hence we grant the motion.

The complaint in the instant action, which avers fraud, lack of informed consent, and malpractice, was filed on September 23, 1976. It states that Mrs. Obenski, wife-plaintiff, visited Dr. Brooks, defendant, a licensed physician who held himself out as an expert in a surgical procedure for the eye known as phacoemulsification, for diagnosis, advice and treatment of cataracts, and that he recommended to her that she undergo phacoemulsification for the removal of the cataract in her left eye. Dr. Brooks allegedly represented to Mrs. Obenski that the operation would be simple, that it would involve no risk, that it would permit her to continue with her normal activities, and further that she met the criteria for administration of the phacoemulsification technique. Plaintiffs aver that, in fact, Dr. Brooks knew that these statements were false, and in particular that he concealed a risk of permanent blinding due to retinal detachment from the operation, a risk that could be exacerbated by the resumption of normal activity soon after surgery. Pursuant to the consent which he received from Mrs. Obenski, Dr. Brooks performed the phacoemulsification procedure on her left eye on Feb-

ruary 4, 1975. As a result of the surgery, Mrs. Obenski allegedly suffered a detached retina and ensuing permanent functional blindness of the left eye.

Plaintiffs contend that Mrs. Obenski's consent to the procedure was invalid or illegal, because in giving her consent she relied upon improper and inadequate information in general, and particularly upon defendant's false and fraudulent representations, which were made by him to induce her consent. They further assert that if she had known the true facts concerning phacoemulsification, including the risks involved therein, she, acting as a reasonable person in the circumstances, would not have agreed to the operation. Aside from these averments of fraud and lack of informed consent, plaintiffs also aver that the blindness was caused by the negligence, carelessness and recklessness of defendant in performing the operation. Both compensatory and punitive damages are claimed.

We initially note that our decision is guided by the general principle that discovery shall be liberally permitted: Pa.R.C.P. 126 and 4007; McCrary v. Kennedy Memorial Hospital, 1 D. & C. 3d 443, 1 PICO 225 (1977); and that the burden of proving the irrelevancy, immateriality or lack of necessity of the information sought via discovery is upon the objector: Tataren v. Little, 1 PICO 107 (1977); Holowis v. Philadelphia Electric Company, 38 D. & C. 2d 260 (Phila. 1966); Kolansky v. Hills, 34 D. & C. 2d 751 (Montg. 1964).

At the March 1, 1977, deposition examination, defendant's counsel objected to, and instructed his client not to answer, three groups of questions propounded by plaintiffs' counsel. The first questions concern a publicity campaign allegedly insti-

tuted by Dr. Brooks; the second group involves Dr. Brooks' professional affiliations; and the final question relates to Dr. Brooks' opinion as to the cause of Mrs. Obenski's detached retina. These questions, and the respective objections thereto, will be considered seriatum.

At the deposition examination counsel for plaintiffs attempted to elicit answers to questions relating to Dr. Brooks' alleged promotional efforts designed to inform the general public of the merits of the phacoemulsification operation and of his ability to perform it. Specifically, the following colloquy occurred:

"BY MR. FELDMAN:

Q. Have you ever made use of a publicity agent in connection with your practice, doctor ?

A. No.

Q. You have appeared on television several times, haven't you?

A. Yes.

Q. And there have been many articles in various newspapers and magazines about you?

A. Yes.

Q. Did you ever play any part, sir, in having the newspaper or magazine articles put in the newspapers or magazines?

MR. KING: Objection. Don't answer the question.

MR. FELDMAN: Do you consider that irrelevant?

MR. KING: I do.

MR. FELDMAN: Did you read our complaint?

MR. KING: I read the complaint.

BY MR. FELDMAN:

Q. Who is Mary Dolan, doctor?

A. She is a friend of my wife's. She functions as a publicity agent.

Q. Have you ever employed her services professionally?

A. Yes.

MR. KING: Objection. Don't answer the question, doctor.

MR. FELDMAN: He already did." (Transcript pp. 79-80.)

Plaintiffs assert that these questions are relevant to their cause of action and hence that defendant should be compelled to answer them upon the resumption of the examination. Defendant maintains that the questions are irrelevant to the theory of liability set forth in plaintiffs' complaint, because the complaint does not indicate that plaintiff relied upon any representations outside of those personally given to her by Dr. Brooks when she consented to the procedure.

A close inspection of the complaint does reveal bare, though sufficient, averments that encompass plaintiffs' somewhat unusual theory that defendant procured Mrs. Obenski's consent to the operation partially through misrepresentations conveyed to her through "sales pitches" carried by the news media. Paragraph 10 of the complaint, while lacking in any specifics, does aver that:

"Because the agreement of plaintiff, Ann Obenski, to have defendant perform said surgery was given *in reliance on the false and fraudulent assurances and representations of defendant* and was given without proper or adequate information, said agreement was not a valid or legal consent to

said surgery, and said surgery constituted an assault and battery on the person of the plaintiff Ann Obenski." (Emphasis supplied.)

Despite the shallow nature of the fraud averment contained therein, no preliminary objections were made to this paragraph, and hence, paragraph 10 stands. We find it to be sufficiently broad to permit discovery designed to flesh out the barren theory that publicity directly attributable to Dr. Brooks may be relevant to plaintiffs' fraud and lack of informed consent allegations. Upon resumption of the deposition examination, Dr. Brooks shall answer the questions posed by plaintiffs' counsel relating to any alleged publicity campaign and his part therein prior to his care and treatment of this plaintiff.

Our determination that these questions are permissible for pre-trial discovery purposes is primarily predicated upon the clear indication in the case law of this Commonwealth that proven reliance upon statements intended for the public can be used in support of an action sounding in fraud. Generally, fraud is the misrepresentation of a material fact upon which a party relies to his detriment. Fraud may induce a person to assent to something which he would not otherwise have done: Greenwood v. Kadoich, 239 Pa. Superior Ct. 372, 357 A. 2d 604 (1976). In the instant matter, plaintiffs assert that Dr. Brooks made fraudulent misrepresentations concerning phacoemulsification, intended to induce consent to the procedure, both to Mrs. Obenski personally, and to the class of persons (namely, cataract sufferers) of which she was a member; and that Mrs. Obenski justifiably relied

upon these fraudulent misrepresentations and was damaged thereby. These allegations set forth a prima facie case of fraud: Neuman v. Corn Exchange National Bank and Trust Company, 356 Pa. 442, 51 A. 2d 759 (1947), opinion supplemented, 356 Pa. 459, 52 A. 2d 177 (1947), at least as to the direct representations. However, the question relevant here still remains, that is whether misrepresentations intended for the general public alone constitute a proper basis for actionable fraud. This question is answered by the following statement:

" 'It is well settled that where a false statement is made to the public at large for the purpose of influencing the action of any individual to whom it may be communicated, any person acting in reliance upon it and thereby sustaining injury may maintain an action against the person who made it, and that in such case it is not necessary that there should be an intent to defraud any particular person; but in such cases the representation must of course have been intended for the public': 20 Cyc. 81-2." Gillespie v. Hunt, 276 Pa. 119, 127, 119 Atl. 815, cert. den. 261 U.S. 622, 43 S. Ct. 519, 67 L.Ed. 832 (1923).

A more recent opinion reiterated this principle although it restricted its application to some degree: "[A] plaintiff may recover for defendant's alleged fraudulent misrepresentation upon a showing that such plaintiff was within the class of persons whom the defendant should reasonably have expected would rely on the statements, and where that plaintiff in fact relied." (Citations omitted),

American Electric Power Company, Inc. v. Westinghouse Electric Corporation, 418 F. Supp. 435 (S.D.N.Y. 1976) (applying both Pennsylvania and New York law).

The upshot of both Gillespie and the more restrictive American Electric opinion is that a fraud claim may be founded upon misrepresentations made to the public at large, as long as the plaintiff acted in reliance upon such public statements. See generally, 37 Am. Jur. 2d, Fraud and Deceit, §244 (1968). Therefore, discovery designed to elicit information concerning the genesis of public statements which purportedly induced wife-plaintiff to undergo surgery must be allowed. We reserve for trial the question of whether plaintiffs must show that Mrs. Obenski was within a specific class of persons for whom misleading public statements were intentionally directed in order to support her averment of fraud based upon public misrepresentations (see Restatement, 2d, Torts, §531) and that she did rely thereon.

In addition to the foregoing, evidence of publicity to the general public may also be relevant to a possible lack of informed consent. The principle of informed consent was initially defined by our Supreme Court in Gray v. Grunnagle, 423 Pa. 144, 223 A. 2d 663 (1966). Gray established that a physician, among his duties to disclose the risks of a procedure to a patient,[1] is proscribed from minimizing the

---

1. Generally, a physician has a duty to communicate to his patient a " 'true understanding of the nature of the operation to be performed, the seriousness of it, and organs of the body involved, the disease or incapacity sought to be cured, and the

dangers to be anticipated as a result of an operation: Jeffries v. McCague, 242 Pa. Superior Ct. 76, 363 A. 2d 1167 (1976); Harrigan v. United States, 408 F. Supp. 177 (E.D. Pa. 1976); Bowers v. Garfield, 382 F. Supp. 503 (E.D. Pa. 1974) aff'd, without opinion, 503 F. 2d 1398 (3d Cir. 1974); see Scott v. Wilson, 396 S.W. 2d 532 (Texas Ct. Civ. App. 1965). If, as plaintiffs assert, defendant caused publicity minimizing the risk to be issued, and Mrs. Obenski took the publicity into consideration when deciding to undergo phacoemulsification, such publicity and defendant's role in its production would be arguably relevant to the informed consent claim at the time of trial. See generally, Incollingo v. Ewing, 444 Pa. 263, 282 A. 2d 206 (1971). Therefore, questions concerning publicity are also permissible because of their potential relevance to plaintiffs' informed consent theory of liability.

The second group of questions which were objected to and left unanswered concern the circumstances of Dr. Brooks' withdrawal of his application for membership in the Philadelphia County Medical Society; whether he had applied to any other organization connected with the practice of medicine other than the Philadelphia County Medical Society of which he did not become a member;

---

possible results.' " Gray v. Grunnagle, 423 Pa. 144, 166, 223 A. 2d 663, 664, quoting Powell, Consent to Operative Procedures, 21 Md. L. Rev. 189, 191 (1961); Dunham v. Wright, 423 F. 2d 940, 945 (3d Cir. 1970). However, only those facts, risks and alternatives that a reasonable man would consider significant or material to his decision whether or not to undergo treatment need be disclosed: Cooper v. Roberts, 220 Pa. Superior Ct. 260, 267-8, 286 A. 2d 647 (1971).

and whether he had ever made inquiry about gaining staff privileges at Chestnut Hill Hospital. Defendant asserts that these questions are irrelevant because the answers thereto cannot produce any evidence concerning Dr. Brooks' qualifications to perform cataract surgery or to practice in the field of ophthalmology, and that any evidence of complaints regarding Dr. Brooks' conduct and ethics are irrelevant to the cause of action set forth in the complaint.

By recognizing the propriety of pre-trial investigation of the allegedly fraudulent publicity, it would be inconsistent to now hold that plaintiffs must be deprived of an opportunity to explore the area in relation to Dr. Brooks' professional affiliations. The actual rejection or withdrawal of a membership application may not be relevant at trial, but follow-up questioning may indicate reasons for same which, if supported, could be relevant at trial. These may include findings that Dr. Brooks was in violation of ethical standards due to inaccurate publicity he generated, and such evidence could be directly relevant to plaintiffs' cause of action. Unrelated to the publicity issue, evidence could be developed relating to his professional qualifications; such evidence could also be of positive value at trial. As stated in O'Connor v. Fellman, 39 D. & C. 2d 51, 54 (Monroe, 1966):

"[T]he test of relevancy in discovery proceedings under Pa.R.C.P. 4007 is not whether the anticipated answer to the proposed question can immediately qualify as admissible evidence, but whether the proposed question may possibly lead to an answer or answers which, alone or together, may be

admissible and possess sufficient probative force to affect a material part of the cause of action." See also Bandes v. Klimowski, 3 D. & C. 3d 11 (Fayette, 1977).

If direct questioning of defendant concerning these questions was to be prohibited, it would probably effectively foreclose plaintiffs from investigating this area. The Peer Review Protection Act of July 20, 1974, P.L. 564, 63 P.S. §425.1 et seq., provides, inter alia, that the proceedings and records of a review committee (which includes most committees established by professional societies or by hospitals) are not subject to discovery or introduction into evidence in any civil proceeding arising out of the matters which are the subject of evaluation and review by such a committee. Due to the act, plaintiffs cannot go directly to the relevant association or hospital to obtain the information they seek to discover which would be within their knowledge. This leaves defendant as the only practical source for such information. Discovery in this area must, however, exclude inquiries into areas that are immune to discovery by virtue of the Peer Review Protection Act.

The final objection is to the question posed to Dr. Brooks, "Sir, do you have an opinion to the cause of the patient's detached retina?" The basis for the objection at the time of the deposition examination was that it improperly called for an opinion. Defendant qualifies this objection in his memorandum, and now contends that plaintiffs are only entitled to Dr. Brooks' opinion as of the time he was involved in treating Mrs. Obenski. At argument, counsel for plaintiffs indicated that an opinion as of the time defendant treated Mrs. Obenski was what

he was pursuing. Hence, we will permit the question, subject to the understanding that it refer to Dr. Brooks' opinion as of that time.

Plaintiffs also asked that Dr. Brooks conform to the notice of deposition and bring with him all documents in his possession pertaining to Ann Obenski when the deposition examination resumes. Defendant states that these records were "afforded" to plaintiffs' counsel on March 9, 1977. Since defendant has previously voluntarily provided these documents, no difficulty should be encountered in requiring Dr. Brooks to bring these documents to the resumed examination for his own reference in answering the questions of counsel concerning the matters reflected in those documents or otherwise pertaining to his care and treatment of plaintiff.

Wherefore, we hereby enter the following

## ORDER

And now, May 12, 1978, it is hereby ordered and decreed that plaintiffs' motion for an order compelling discovery is granted and that the deposition examination of defendant, Dennis Lee Brooks, M.D., shall be resumed, and that (1) defendant shall answer the following questions and those questions which reasonably flow therefrom:

(a) questions appearing on pages 79 and 80 of the deposition transcript concerning publicity fostered, procured or otherwise obtained by actions of defendant;

(b) questions appearing on pages 77, 79 and 84 of the deposition transcript concerning defendant's applications to professional societies and inquiries made by him about gaining hospital staff privileges;

and (c) the question appearing on page 58 of the deposition transcript concerning his opinion of the cause of plaintiff's detached retina;

and further that (2) defendant shall bring with him all documents requested in the notice of deposition filed of record on February 15, 1977.