# Duff *versus* Williams.

If a party make erroneous representations of the solvency of another he will not be liable in an action of deceit for such representations, if, at the time he made them, he honestly believed them to be true.

November 15th 1877.   Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.

Error to the Court of Common Pleas of *Beaver county*.   Of October and November Term 1877, No. 206.

[Duff *v.* Williams.]

Action on the case by Robert Williams against John C. Duff, for an alleged deceit practised upon the plaintiff by the defendant, whereby the plaintiff was induced to loan to Agnew Duff, brother of defendant, the sum of $1500, under the belief that at the time said Agnew Duff was solvent and able to repay the loan.

For the money loaned Agnew Duff gave a note, dated September 17th 1874, payable in one year. The note was joint in form, having the word "we" written therein, but was signed by Agnew Duff alone.

The latter, on the 8th of January 1875, made an assignment for the benefit of creditors, his liabilities amounting to about $45,000 and his appraised assets about $37,000. When the plaintiff discovered that out of the assets he would not realize the full amount of his claim he brought this suit, alleging that the representations made by defendant induced the loan and were false and fraudulent and made with the intent to deceive the plaintiff, and that they did so deceive him.

At the trial the plaintiff testified, in substance: "I was in the store of defendant about the 12th of September 1874, and had some money which I wanted to give to him. Defendant replied that he did not want it, but that he knew a good man that would want it, and that he would vouch for him; I remarked it made no difference to me so it was a good man, and defendant said he would go on the note as bail, along with him, as a good borrower. He asked me how much I had to loan, and I said $1500. Three or four days thereafter Agnew Duff came to me and said he had come for that money; that John had sent him for it, and that John said he would go on it as surety. He gave me a note and said to go down to John and he would go on it. I would not have loaned the money at all, only on the representations of John C. Duff. I went down about a week thereafter to see John, and laid the note down on the table before him and wanted him to put his name to it. He said it was good enough without. I could not get him to sign it."

The defendant testified: "Plaintiff came to our store about the middle of September 1874; took me to one side and wanted to know if I wanted to borrow some money; I told him not. He then asked me if I knew any one who did; he said he had $1000 to put out; that he did not want to keep it about the house. I told him Agnew might take it, perhaps; he said he supposed he was good; I told him I thought he was; he asked me if I would go on his note; I told him I would not, as I was endorser for him in bank a good deal, and it had to be paid when it came due; he then said to me he guessed he was good enough himself; said something about his owning real estate; he then requested me to write to Agnew, as he had the money and did not want to keep it about the house; I wrote to him that he had $1000 he wanted to put out, as he requested me; plaintiff had not been a customer of mine for

ten or twelve years; the sum of $1500 was not mentioned in our conversation at all; he never consulted me before about his financial matters; about a month after Agnew made his assignment I heard of plaintiff again; had seen him in the store before this, but did not speak to me about the note; not till after the assignment; he did not call at my store, to my knowledge, till next week after the note expired; I did not see him or hear of him."

Agnew Duff testified: "I received information from John C. Duff that the plaintiff had $1000 to loan; I went out to see Mr. Williams; met him between the house and the barn; he seemed to know what I was after; told me to come into the house; said he had got $500 more, and wished to put it all out together; he brought out $1500; the note was prepared in his house, on his table; he said he did not know but he ought to have John C. Duff on the note, but he thought it was good enough without; I said I thought it was myself; he said nothing about John having agreed to go on it; the only explanation I can give why I wrote 'we' in the note is, that when Williams made the remark about John going on it, I said maybe he would; this is all I can tell about it; I did not say he would go on it, but merely that perhaps he would do so; I had no authority to say he would go on it."

The fourth and fifth points of the defendant, with the answers of the court, Hice, P. J., were as follows:—

4. To enable the plaintiff to recover the jury must believe that John C. Duff represented his brother Agnew to be in good and solvent circumstances at the time the plaintiff applied to him; that the plaintiff, owing to his relations with the defendant, had a right to rely upon such representation; that such representation was false; that John C. Duff knew and believed, or had reason to know or believe it to be false, and made such representation recklessly, without any just reason for making the same, and with the design and intent fraudulently and dishonestly to enable his brother to obtain the plaintiff's money.

Ans. "We cannot affirm this point in all its length, and make it as stated. It is necessary that the jury find as facts in the case that defendant represented his brother as in good and solvent circumstances at the time the plaintiff applied to him, and that such representations were false; but no special relation between the plaintiff and defendant was necessary. In this regard it would be sufficient if the plaintiff went to the defendant to loan him the money, and the defendant not wanting it, then and there made the alleged false representations with the view to enable his brother to get the money, without showing any other relations between the parties, such as those of special trust, confidence, or anything of the kind, nor was it necessary that the defendant, if he made the statements and representations, actually knew them to be false. If he made them recklessly, without sufficient reason for knowing and

[Duff *v.* Williams.]

believing them to be true, and with the intent to enable his brother Agnew thereby to obtain the plaintiff's money, and the representations turned out afterwards to be false, and damage resulted, it would be sufficient to create the liability of defendant, without it appearing that the defendant knew, or had reason to know or believe them false."

5. If the jury believe that John C. Duff from time to time sought information as to his brother's standing financially, and with an honest belief that he (Agnew) was solvent and could pay his debts, so represented his circumstances to Williams, the plaintiff cannot recover, even if such representation turned out afterwards to be incorrect.

Ans. " This we affirm—if by 'so represented his circumstances to Williams,' we are to understand, giving or communicating information to plaintiff as information thus obtained merely ; but the case would be different if he made the representations and statements as actual facts of his own knowledge."

The verdict was for the plaintiff for $1491, and defendant took this writ, assigning for error, inter alia, the foregoing answers to his points.

*S. B. Wilson* and *Frank Wilson,* for plaintiff in error.—The only question was whether John C. Duff made the representations in good faith, and the defendant having offered evidence to show that they were so made, the jury should have been instructed that if they believed this evidence, there could be no recovery in this form of action : Bokee *v.* Walker, 2 Harris 139 ; Dilworth *v.* Bradner, *ante,* 238.

*John J. Wickham,* for defendant in error.

Mr. Justice STERRETT delivered the opinion of the court, January 7th 1878.

In answer to the fourth point the learned judge said to the jury that, if the defendant made the alleged statements and representations, it was unnecessary to show that he " actually knew them to be false.  If he made them recklessly, without sufficient reason for knowing and believing them to be true, and with intent to enable his brother Agnew thereby to obtain the plaintiff's money, and the representations afterwards turned out to be false and damage resulted it would be sufficient to create the liability, without it appearing that the defendant knew or had reason to know or believe them false."  This instruction was not strictly correct.  It ignored the fact that the defendant may have honestly believed that the statements and representations were true ; and it permitted the jury to inquire, not whether, in point of fact he did so believe, but whether he had sufficient reason for knowing and believing them to be true.

[Duff *v.* Williams.]

They might be satisfied that he had entire confidence in the truth of all that he stated, in regard to his brother's solvency, and yet, at the same time they might come to the conclusion that he had not sufficient reason for the faith that was in him, and thus hold him responsible, not for the want of an honest belief, but for the insufficiency, in their judgment, of the reasons upon which it was founded. The defendant may have spoken inconsiderately or even recklessly, yet if he believed what he said he was not liable. It is said by Chief Justice GIBSON in Bokee *v.* Walker, 2 Harris 139, that "in actions of deceit the jury have to deal with a question of good faith, and if they are satisfied that the defendant believed his own story it is their duty to find in his favor. * * * A man who believes what he says is not chargeable with bad faith ; and the state of his belief is a fact for the jury. * * * Sincerity of belief, however apparently unfounded, is an unmixed matter of fact; and, if it were not the test, every recommendation would be a warranty." If the defendant asserted as facts, matters of which he had neither knowledge nor belief, or if he knowingly falsified or wilfully suppressed the truth, and did so not for the purpose of injuring the plaintiff, but with the view of giving credit to his brother, he was guilty of falsehood and would be responsible for all the consequences directly resulting therefrom. "A man who asserts what he does not know is guilty of duplicity, though he happen to assert the truth; and whatever the motive he is not the less dishonest." But this was not the question submitted to the jury. It appears to have been taken for granted that the defendant had some knowledge of his brother's financial condition ; and the questions raised by the plaintiff's counsel were whether the statements he made were wilfully false, or whether he had any sufficient reason for believing them to be true. Of course the grounds of his alleged belief were proper subjects of inquiry in determining whether or not a sincere belief was entertained; but after all it must come back to the question of good faith on the part of the defendant. Did he honestly believe that the statements he made were true, or did he know that they were false ? We are of opinion that the question was submitted to the jury in a manner that was calculated to lead them into an inquiry that was irrelevant, and prejudicial to the defendant ; and for this reason the first assignment of error should be sustained.

The defendant was entitled to an unqualified affirmance of his fifth point, in which the court was requested to say, "if the jury believe that John C. Duff, from time to time, sought information as to his brother's standing, financially, and with an honest belief that he was solvent and could pay his debts, so represented his condition to Williams, the plaintiff cannot recover, even if such representations turned out afterwards to be incorrect." This was putting the defence on its true ground—that of good faith. While the learned judge affirmed this proposition, he did so with a quali-

[Duff v. Williams.]

fication which greatly weakened its force, by saying, "if by the words ' so represented his circumstances to Williams,' we are to understand giving or communicating information to the plaintiff, as information thus obtained merely; but the case would be different if he made the representations as actual facts, as of his own knowledge." The jury would likely understand from this that the defendant was bound to inform the plaintiff that he had made inquiry as to his brother's standing, and give him in detail the information he had thus obtained, so that he might have the *data* from which to draw his own conclusions. Of course there could have been no objection to this mode of imparting information to the plaintiff, but it is not the only way in which it could be honestly done. He could, with equally good faith, state, as conclusions of fact, the inferences which he drew from the information he had obtained. If, as the result of inquiry, he came to the conclusion that his brother's financial standing was as good as his own, what would be the impropriety of honestly stating this to the plaintiff, as a fact, instead of communicating to him the items of information upon which he had formed his judgment and belief? Taking into consideration all that was said and done, it must, after all, resolve itself into a question of sincerity and good faith. The principles involved are so clearly stated in Bokee v. Walker, *supra;* Boyd's Ex'rs v. Browne, 6 Barr 310; Huber v. Wilson, 11 Harris 178; Rheem v. The Naugatuck Wheel Co., 9 Casey 358; Graham v. Hollinger, 10 Wright 55, and Dilworth v. Bradner et al., ante 238, that it is unnecessary to pursue the subject any further.

Judgment reversed, and a *venire facias de novo* awarded.